Law Office of Adam Pennella
Adam Pennella, State Bar No. 246260
717 Washington Street
Oakland, CA 94607
Phone (510) 451-4600
Fax (510) 451-3002

Counsel for Defendant
CLAUDIA RANGEL RODRIGUEZ

UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CLAUDIA RANGEL RODRIGUEZ,<br><br>　　　　Defendant | Case No.: CR 19-413 EMC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE**<br><br>Date:  March 24 2022<br>Time: 9:00 a.m.<br>Honorable Edward M. Chen |

## **INTRODUCTION**

Defendant Claudia Rangel Rodriguez respectfully submits the following sentencing memorandum and motion for variance.

Ms. Rangel will appear before this Court on the above date and time for sentencing based on her guilty plea to drug distribution. That conviction stems from her extremely limited conduct assisting her then boyfriend in his drug trafficking efforts. Given Ms. Rangel's extremely minimal role, her tragic and compelling personal history and circumstances, as well as the collateral effects of this conviction on her (and her children), Ms. Rangel respectfully requests a sentence of time served, up to one year of home confinement/location monitoring, and the remaining terms of supervised release suggested by Probation.

//

**PROBATION REPORT AND RECOMMENDATION; OBJECTIONS**

U.S. Probation Officer Melissa Moy prepared a thorough Presentence Investigation Report (PSR) in this matter. Ms. Rangel has no objections to its content or calculations. Probation notes that the following factors support a downward variance: Ms. Rangel played a minor role in the offense; her conduct was motivated by a romantic relationship with her co-defendant; she has a minimal criminal history; her significant history of trauma, including the death of her parents when she was a young child; the fact that she is the primary (indeed only) caregiver of her three minor children; her history of untreated depression; her compliance with the terms of pretrial release; and her deportability.

Ultimately, Probation recommends a downward variance to 12 months imprisonment and a term of four years of supervised release. Ms. Rangel requests that the Court impose a sentence of time served and substitute the imprisonment recommended by Probation for up to one year of home confinement, location monitoring, or a similar restriction on her liberty at the discretion of Probation. She has no objections to the terms of supervised release recommended.

**PERSONAL HISTORY AND CHARACTERISTICS**

The PSR outlines Ms. Rangel's sad and traumatic history, including the murder of her father and early death of her mother. She also suffered serious physical, emotional, and sexual abuse during her youth. Her life in Mexico – and threats made to her by dangerous people – led her to flee to the safety of U.S. with her then young son, Jairo. She lived here for almost a decade, and met her long-term partner and the father of her three minor children. Then in 2011, the family returned to Mexico. However, due to the extensive drug related violence in her home town, as well as credible threats against her, the family made the trip to return to the U.S. She crossed at a legal port of entry with the children and requested asylum. While she was paroled

into this country,[1] he was denied entry and has remained in Mexico since. While they still are close, distance effectively ended their relationship. As a result, Ms. Rangel has been a single mother and the sole provider for her children for the past ten years. She has supported herself and kids through a variety of jobs. Most recently, and for the past five years, she has worked in agriculture (alternating seasonally between working in the field picking fruit and in a fruit packing plant).

She has been doing her best to provide for her children, although her oldest son has presented a number of significant problems in the past few years: he suffers from psychosis and schizophrenia, and has been involuntarily committed (i.e., pursuant to Cal. Welf. Inst. Code § 5150) several times. After his most recent release, he disappeared and made his way to Mexico. He remains there, which is a huge emotional strain on Ms. Rangel, as this is the first time she cannot care for him at a time when she feels he needs her the most.

She hopes that he gets help and can eventually return to live with her and the other children. Most importantly, she wants and needs to be available to her minor children, as there is no other family in the U.S. who could care for them were she incarcerated.

## OFFENSE CONDUCT

Her conduct in this case stems from a romantic relationship with her co-defendant, Alejandro Hernandez-Bonilla. He seemed to a be a decent partner who treated her well: he never abused her, ostensibly cared for her, helped around the house, and was good to her children.

---

[1] When she was paroled into the country, she was given a notice to appear in court. Thereafter, Ms. Rangel contacted the immigration authorities a number of times after her entry into the U.S. They never had any information for her related to her case or a court date. After her arrest in this case, undersigned counsel spoke with immigration authorities. It was determined that Ms. Rangel was given a notice to appear in court with a "TBD" court date, which was apparently commonplace at that time. Apparently due to clerical error, her citation was never processed, which is why immigration did not have any record of her case. Upon release from federal custody after her detention hearing, she was placed on location monitoring by immigration and has been compliant with those terms since. Her asylum case remains pending.

Her extremely circumscribed conduct is outlined in PSR. In stark contrast to everyone else indicted, she had no knowledge or understanding of the larger drug trafficking organization and her involvement was minimal: she assisted Mr. Hernandez-Bonilla by driving him to a drug deal in San Francisco. Once there, and at his direction, she retrieved a bag in the trunk and gave it to him, which he then provided to the undercover agent. She also allowed him to store a suitcase with drugs at the house for a few days. She did not receive any monetary or other compensation for her conduct. And unlike others charged in this case, she did not participate in any other criminal conduct.

## **SENTENCING CONSIDERATIONS**

In determining a reasonable and appropriate sentence, the Court must consider those factors set forth in 18 U.S.C. 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant. The Guidelines are advisory, *Gall v. United States*, 552 U.S. 38, 46-47 (2007), and there is no presumption in favor of a Guidelines' calculation. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (citation omitted) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. In *Rita* we said as much, in fairly explicit terms: "'[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.'"). The District Court is thus not required to use a formulaic approach to produce a mathematical justification for a non-Guidelines sentence. *Gall*, 128 S.Ct at 596. Rather, it must exercise a "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors. *Rita v. United States*, 127 S. Ct. 2456, 2469 (2007). In short, the District Court's duty is to impose the least amount of time necessary to achieve 3553(a)'s purposes. The Guidelines are subordinate to that duty.

**A. Ms. Rangel's personal circumstances warrant a downward variance**

The trauma and abuse Ms. Rangel suffered through her life are appropriate bases for a variance: "it requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982). The fact that she lost her parents, suffered physical and sexual abuse, was shamed for her early pregnancy, feared for her and her children's lives in Mexico, and had to request asylum are all significant incidences of trauma warranting a variance. See also *U.S. v. Walter*, 256 F.3d 891 (9th Cir. 2001) (combination of physical and sexual abuse constitute the type of extraordinary circumstances justifying consideration of the psychological effects of childhood abuse for downward departure). Indeed, her history also helps explain why she would be willing to help an otherwise seemingly decent partner, which led to her involvement in the criminal conduct in this case.

**B. Her sole caregiver status to three minor children militates for the requested sentence**

"Courts imposing punishment are not precluded from weighing as a factor a defendant's family ties and responsibilities. . . Indeed, the family circumstances of a criminal defendant often play an important role when judges craft sentences from the Guideline's factors. *See, e.g., United States v. Munoz-Nava,* 524 F.3d 1137, 1148 (10th Cir. 2008) (variance of a criminal sentence justified where defendant was primary caretaker and sole supporter of eight-year-old son); *United States v. Schroeder*, 536 F.3d 746, 756 (7th Cir. 2008) (remand ordered so the district court could consider the family circumstances of the defendant as a mitigating factor); *Johnson*, 964 F.2d at 129 (defendant offered extraordinary circumstances when she had sole responsibility for three young children); *United States v. Pena*, 930 F.2d 1486 (10th Cir. 1991) (affirming downward departure where defendant supported infant and minor daughter with

infant); *United States v. Arize*, 792 F. Supp. 920, 921 (E.D.N.Y. 1992) (downward departure warranted where court was concerned that sentence would result in loss of custody of child).

These decisions further the precept that courts are "reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing." *United States v. Chamness*, No. 5:11-CR-00054-R, 2012 U.S. Dist. LEXIS 106496, at *16-18 (W.D. Ky. July 30, 2012) (citation omitted). *See also United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) ("We find no abuse of discretion in the district court's conclusion that [community service], a hefty restitution order ($50,000) and five years of supervised release were more appropriate than prison. At the sentencing hearing, the court heard from [the defendant] and his father, who told the court how [the defendant] repented his crime; how he had, since his conviction, devoted himself to his house-painting business and to building an honorable life; how his eight-year-old daughter depended on him; and how he doted on her. In addition, the court took into account its finding that [the defendant]'s crime '[di]d not pose the same danger to the community as many other crimes.'"); *United States v. Bariek*, No. 01:05cr150 (JCC), 2005 U.S. Dist. LEXIS 44552 (E.D. Va. Sept. 23, 2005) (court found lengthy term of incarceration unnecessary in case where defendant has maintained steady employment, has supported his family, is well-respected, has no prior criminal history, and therefore poses a low risk of recidivism). *See also United States v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005) (on remand of bank fraud case, district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed); *United States v. Dominguez*, 296 F.3d 192 (3d Cir. 2002) (district court erred in concluding that it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (sentence of

probation affirmed where justified by the atypical nature and circumstances of the felon in possession case and by the defendant's need to care for her nine-year-old developmentally disabled son); *United States v. Newell*, 790 F. Supp. 1063, 1065 (E.D. Wash. 1992) (Despite a bottom Guideline of 33 months, the District Court held that a "sentence of six months incarceration, followed by six months home detention and three years supervised release . . . is a reasonable balance. The guidelines purposes of punishing and deterring criminal conduct are served by this sentence. At the same time, the chances for stable lives for the children are increased.").

Any period of incarceration will wreak havoc upon Ms. Rangel's children: she is not just the *primary* caregiver and breadwinner, but the only one. In short, if Ms. Rangel were sentenced to imprisonment, her children would end up in foster care. Moreover, a term of imprisonment will lead to transfer to immigration custody and immediate deportation. For this reason, we request that the Court sentence her to a term of time served with the restriction on her liberty in the form of home confinement, location monitoring, or whatever form of restriction Probation finds appropriate.

**C. The Collateral Consequence of Deportability warrant a downward variance**

The real and punitive consequence of this conviction making Ms. Rangel deportable is already a significant punishment and therefore warrants consideration of a downward variance. See *U.S. v. Mendez-Velarde*, 798 F.Supp.2d 1249 (D.N.M. 2011); see also *Jordan v. DeGeorge*, 341 U.S. 223, 232 (1951) (Jackson, J, dissenting) (deportation is a "life sentence of banishment in addition to the punishment a citizen would suffer for identical acts."). This is a particularly harsh consequence for Ms. Rangel, as her three minor children were born here and are therefore U.S. citizens. Indeed, she has spent half of her life in this country as a law-abiding, contributing

member of society. Her main purpose has been to provide her children with a better, safer life than she ever had.  Moreover, she faces serious danger of violence and persecution in Mexico; should she be deported, it is likely that she will be victimized upon her return there.  In many ways deportation is even more punitive consequence than a term of imprisonment.

For this reason as well, we request a sentence of time served and home confinement as a condition of supervised release.

## **CONCLUSION**

Given the reasons cited above, Ms. Rangel respectfully requests that this Court impose a sentence of "time served," followed by supervised release with a special condition of home confinement or location monitoring at the direction of Probation.

Dated: March 18, 2022                Respectfully Submitted:


_____/s/_____
Adam Pennella
Counsel for Claudia Rangel Rodriguez